[Cite as *Murphy v. Murphy*, 2016-Ohio-7504.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STEPHEN MURPHY | : | JUDGES: |
| | : | Hon. Sheila G. Farmer, P.J. |
| Plaintiff - Appellee | : | Hon. William B. Hoffman, J. |
| | : | Hon. Craig R. Baldwin, J. |
| -vs- | : | |
| | : | |
| PATRICIA MURPHY | : | Case No. 2016CA00055 |
| | : | |
| Defendant - Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:     Appeal from the Stark County Court
of Common Pleas, Family Court
Division, Case No. 2015 DR 00057


JUDGMENT:     Affirmed


DATE OF JUDGMENT:     October 24, 2016


APPEARANCES:

For Plaintiff-Appellee                     For Defendant-Appellant

JOHN E. MYERS                          HOLLY DAVIES
101 Central Plaza South              Chase Tower
200 Chase Tower                        101 Central Plaza South
Canton, Ohio 44702                    Canton, Ohio 44702

*Baldwin, J.*

{¶1} Defendant-appellant Patricia Murphy appeals from the March 11, 2016 Decree of Divorce issued by the Stark County Court of Common Pleas, Family Court Relations Division.

STATEMENT OF THE FACTS AND CASE

{¶2} Appellee Stephen W. Murphy III and appellant Patricia Murphy were married on July 1, 1989. On January 22, 2015, appellee filed a complaint for divorce against appellant. At the time, the parties' two children born as issue of the marriage were emancipated. No answer or counterclaim was filed by appellant. Subsequently, an evidentiary hearing before a Magistrate was held on October 7, 2015. At the hearing, the parties stipulated to all matters except whether or not any spousal support should be awarded to appellee and the length of the marriage.

{¶3} At the hearing, appellee, whose date of birth is June 5, 1952, testified that he separated from appellant on approximately July 1, 1998. He testified that, during the marriage, he was employed by the Community Health Center and, starting in 1997, by Oriana House where is employed as a chemical dependency counselor. After separating from his wife in 1998, appellee went to college and graduated with an associate's degree in technology. Appellee's W-2 form for 2014, which was admitted as an exhibit, shows that his gross earnings for 2014 were $36,403.15. After health and dental insurance costs were deducted, appellee's reported W-2 wages were $31,742.11. Appellee testified that out of such sum, $1,968.01 was deducted for Social Security, $4,625.28 was deducted for federal withholding and $460.26 was deducted for Medicare.

{¶4} Appellee testified that he paid around $600.00 a month for rent, $90.00 a month for electric, $125.00 a month for heat, $154.68 a month for cable, internet and phone, and approximately $250.00 a month for groceries. He also testified that he spent $10.00 a month on restaurants. Appellee has two vehicle loans that are in his name only. He testified that he owed approximately $3,000.00 on a 2000 Volkswagen Bug and approximately $4,000.00 on a 2006 Town and Country van. While the monthly payments on the loans are approximately $400.00 a month, appellee also spends approximately $20.00 a month on vehicle maintenance and $240.00 a month on gasoline. Appellee further testified that he spends $25.00 a month each on haircuts and dry cleaning, a little over $500.00 a month on auto and life insurance, $10.00 to $12.00 a month for prescriptions, $25.00 a month for pet expenses, $15.00 a month additional rent to have a cat, and $68.00 a month on a personal loan.

{¶5} Appellee testified that he paid for college using student loans and that, prior to filing for divorce, he had filed bankruptcy but was unable to discharge the loans, the approximate balance of which was $27,000.00. Appellee was unable to make any payments on the student loans. When asked his average monthly expenditures, appellee testified that they were around $2,616.97 and that he was living paycheck to paycheck. To make ends meet, appellee has taken out payday loans, donated plasma a few times, and borrowed $1,200.00 from a friend. He testified that he was not saving for retirement because he was unable to do so. Appellee asked for spousal support from the date of marriage to the time of the hearing.

{¶6} On cross-examination, appellee testified that he and appellant had been living separately since they separated in 1998 and that each paid his/her own bills.

According to appellee, the parties' two children, who were minors at the time of their separation, had been living with appellant since the parties' separation and appellant had primarily cared for them since then, although appellee kept the children on his health insurance. Appellee testified that he believed that the children were still on his insurance as of the time of the hearing. Appellee testified that he lived with his significant other, Wanda Barker, and that his expenses were for two people.

{¶7} Appellee's unsecured debts were discharged in a Chapter 7 individual bankruptcy in 2012. Appellee testified that he had a premarital annuity in the amount of $12,609.03, but no other retirement account and that, three and a half years earlier, he had been diagnosed with Bell's Palsy. The Bell's Palsy did not prevent appellee from working at Oriana House.

{¶8} At the hearing, appellant, who was born on March 30, 1961, testified that she lived with her son who did not pay rent to her. She testified that she was currently employed by Todd Associates Inc. in commercial marketing. According to appellant, she started working there in 1987, left in 1994 and then returned in 2001. She testified that the children were on her hospitalization and that her income was approximately $87,000.00 a year. Appellant testified that since they separated on July 1, 1998, she and appellant had maintained separate households and finances.

{¶9} When asked her income at the time of her marriage in 1998, appellant testified that it was approximately $50,000.00 a year. She testified that her income had increased due to hard work and promotions and that she had a high school diploma. Appellant's monthly expenses included $404.00 a month for health insurance, $297.00 a month for a car loan, and $985.00 a month for rent. Appellant testified that she had no

unsecured debt except for $300.00 on one credit card and that she paid cash for everything. She testified that her health was fairly good and that there had been no financial intertwining between her and appellee since their separation.

{¶10} On cross-examination, appellant agreed that her monthly gross income was $7,515.36 and monthly net income was $4,146.54. She testified that the difference between the two was spent on taxes, hospitalization, nursing home long term care, and repaying a 401K loan. Appellant has a retirement plan through her employer. In 2014, appellant paid $14,821.00 in federal income taxes. When asked why she had not filed for divorce when she had been making in the high seventies, low eighties for quite some time, appellant testified that it was an "oversight" on her part. Transcript of October 7, 2015 hearing at 41.

{¶11} On redirect, appellant testified that while she did not work for Todd and Associates for a period of time between 1998 and 2001, she was still working at other jobs and other avenues to make money.

{¶12} The Magistrate, in an Order filed on October 9, 2015, asked the parties to brief the issue of duration of the marriage. Both parties filed post trial briefs. The Magistrate, in a Decision filed on October 26, 2015, found that the termination date for the marriage was October 7, 2015, the date of the final hearing. The Magistrate recommended that appellant be ordered to pay appellee spousal support in the amount of $1,800.00 a month for 98 months, that such support terminate upon the remarriage or death of appellee, and that the court not retain jurisdiction over the duration or amount of spousal support. Appellant filed objections to the Magistrate's Decision.

**{¶13}** The trial court, in a Judgment Entry filed on February 12, 2016, adopted the Magistrate's Decision in part and modified it in part. The trial court found that the termination date of the parties' marriage was October 7, 2015. The trial court ordered that appellant pay appellee spousal support for 36 months rather than 98 months and that spousal support would terminate upon the death of either party or the remarriage of appellee. The trial court retained jurisdiction over the amount of support and ordered appellant's counsel to prepare the final entry.

**{¶14}** A Decree of Divorce was filed on March 11, 2016.

**{¶15}** Appellant now raises the following assignments of error on appeal:

**{¶16}** THE TRIAL COURT ABUSED ITS DISCRETION BY SELECTING OCTOBER 7, 2015 AS THE DATE FOR TERMINATION OF THE MARRIAGE.

**{¶17}** THE TRIAL COURT ABUSED ITS DISCRETION IN AWARDING APPELLEE ANY AMOUNT OF SPOUSAL SUPPORT.

I

**{¶18}** Appellant, in her first assignment of error, argues that the trial court abused its discretion in using October 7, 2015, the date of the final hearing, as the termination date for the marriage rather than July 1, 1998, the date of the parties' separation. We disagree.

**{¶19}** Appellant, in her brief, cites to R.C. 3105.171(A)(2), which deals with division of property and separate property. Such section states as follows:

(A)    As used in this section:..

(2)    "During the marriage" means whichever of the following is applicable:

(a)     Except as provided in division (A)(2)(b) of this section, the period of time from the date of the marriage through the date of the final hearing in an action for divorce or in an action for legal separation;

(b)     If the court determines that the use of either or both of the dates specified in division (A)(2)(a) of this section would be inequitable, the court may select dates that it considers equitable in determining marital property. If the court selects dates that it considers equitable in determining marital property, "during the marriage" means the period of time between those dates selected and specified by the court. (Emphasis added).

**{¶20}** Appellant argues that, under R.C. 3105.171(A)(2) and cited case law, the trial court should have found the de facto termination of the marriage to be July 1, 1998, the date of the parties' separation. However, as noted by the Magistrate, there is no authority to apply R.C. 3105.171, the property division statute, to the issue of spousal support.

**{¶21}** Moreover, we cannot say that the trial court abused its discretion in finding that the term of the marriage was from July 1, 1989 to October 7, 2015. In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983). As noted by the trial court in its February 12, 2016 Judgment Entry:

While the parties lived separately, there is no evidence that either party intended to terminate the marriage on that date. Either party could have filed a divorce between the date of separation and that date Husband [appellee] finally did file. Wife [appellant] did not file. Wife's only rational for

not doing so was that it was an oversight, which is very hard to believe. As the Magistrate notes, she did not even file an answer or counterclaim in this action.

**{¶22}** In addition, after the parties separated, their children, who were living with appellant, had visitation with appellee. Appellant testified that when the children were with appellee, he was supporting them. Appellee testified that he maintained the children on his health insurance when they were minors. The Magistrate, in her Decision adopted with limited exceptions by the trial court, noted that the parties "shared a mutual interest, or joint enterprise, in raising their two children, who were ages five and two when the Husband moved out."

**{¶23}** Appellant's first assignment of error is, therefore, overruled.

II

**{¶24}** Appellant, in her second assignment of error, maintains that the trial court abused its discretion in awarding spousal support to appellee. We disagree.

**{¶25}** A trial court's decision concerning spousal support may be altered only if it constitutes an abuse of discretion. *Kunkle v. Kunkle,* 51 Ohio St.3d 64, 67, 554 N.E.2d 83 (1990). An abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore,* 5 Ohio St .3d 217, 450 N.E.2d 1140 (1983).

**{¶26}** R.C. 3105.18(C)(1)(a) through (n) set forth factors a trial court is to consider in determining whether spousal support is appropriate and reasonable, and in determining the nature, amount, terms of payment, and duration of spousal support:

**{¶27}** (C)(1) In determining whether spousal support is appropriate and reasonable, and in determining the nature, amount, and terms of payment, and duration of spousal support, which is payable either in gross or in installments, the court shall consider all of the following factors:

(c)     The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 of the Revised Code;

(d)     The relative earning abilities of the parties;

(e)     The ages and the physical, mental, and emotional conditions of the parties;

(f)     The retirement benefits of the parties;

(g)     The duration of the marriage;

(h)     The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;

(i)     The standard of living of the parties established during the marriage;

(j)     The relative extent of education of the parties;

(k)     The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;

(l)     The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;

(m)     The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;

(n)     The tax consequences, for each party, of an award of spousal support;

(o)     The lost income production capacity of either party that resulted from that party's marital responsibilities;

(p)     Any other factor that the court expressly finds to be relevant and equitable.

{¶28}  Trial courts must consider all the factors listed in R.C. 3105.18(C). We have previously held that a trial court need not acknowledge all evidence relative to each and every factor listed in R.C. 3105.18(C) and we may not assume that the evidence was not considered. *Hutta v. Hutta,* 177 Ohio App.3d 414, 2008–Ohio–3756, 894 N.E.2d 1282, ¶ 27 (5th Dist.), citing *Clendening v. Clendening,* 5th Dist. Stark No.2005CA00086, 2005–Ohio–6298, ¶ 16. The trial court must set forth only sufficient detail to enable a reviewing court to determine the appropriateness of the award. *Id.,* citing *Kaechele v. Kaechele,* 35 Ohio St.3d 93, 518 N.E.2d 1197 (1988).

{¶29}  Upon our review of the record, we cannot say that the trial court abused its discretion in awarding spousal support to appellee. We find that there was sufficient detail to enable this Court to determine the appropriateness of the award and that the trial court's award was not arbitrary, unconscionable or unreasonable.

{¶30} In the case sub judice, the parties were married over 26 years. Throughout the parties' marriage, appellant, who only has a high school diploma, has earned substantially more than appellee. While appellant's monthly gross income is $7,515.36, or approximately $90,000.00 a year, appellee's gross earnings for 2014 were $36,403.15.

{¶31} Appellant was, at the time of trial, in her early 50s, in good health, and has health insurance through her employer. Appellant also contributes to a retirement account, a life insurance plan and a long term nursing care plan. Appellant had significant disposable income after her monthly expenses and testified that she paid cash for everything.

{¶32} In contrast to appellant, testimony was adduced that appellee, who went to college after the parties separated and is a chemical dependency counselor, lives paycheck to paycheck. His monthly expenses are around $2,616.97 and he owes approximately $27,000.00 on student loans. Appellant did not contribute to appellee's higher education. Testimony was adduced that appellee, who was 63 years old, is unable to save for retirement or to pay on his student loans and was diagnosed with Bell's Palsy, which has not prevented him from working at Oriana House.

{¶33} Appellant contends that the trial court abused its discretion when it drastically reduced the amount of spousal support recommended by the Magistrate without explanation. As is stated above, the trial court reduced the duration of spousal support from the 98 months recommended by the Magistrate to 36 months. We concur with appellee that the trial court, by doing so, considered the parties' separation. The trial court, in its February 12, 2016 Judgment Entry, noted that it traditionally had granted spousal support for a term of one third of the parties' marriage. Based on the length of

the parties' marriage, the Magistrate recommended that spousal support be awarded for a period of 98 months. The trial court, however, awarded spousal support for a period of 36 months, which is approximately one third of the parties' marriage up to their separation.

**{¶34}** Appellant's second assignment of error is, therefore, overruled.

**{¶35}** Accordingly, the judgment of the Stark County Court of Common Pleas, Family Court Division is affirmed.

By: Baldwin, J.

Farmer, P.J. and

Hoffman, J. concur.